UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

PBS FOODS, LLC,
d/b/a Payard Patisserie & Bistro,

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YANN GERON, Chapter 7 Trustee,

Plaintiff-Appellee,

-against-                                  15-cv-4967 (LAK)
                                                                      16-cv-3272 (LAK)

HOLDING CAPITAL GROUP, INC., et ano.,                                [Case No. 09-15629 (JLG)]
                                                                      [Adv. Proc. No. 11-2717 (JLG)]
Defendants-Appellees,

-and-

1032-1034 LEX. AVE., LTD.,

Creditor-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Avrom R. Vann
AVROM R. VANN, P.C.

M. David Graubard
KERA & GRAUBARD

*Attorneys for Creditor-Appellant*

2

Caroline A. Morgan
Nicole N. Santucci
Fox Rothschild LLP
*Attorneys for Plaintiff-Appellee*
*Yann Geron, Chapter 7 Trustee*


John Ignatius O'Neill
John A. Risi
Bleakley Platt & Schmidt, LLP
*Attorneys for Defendants-Appellees*


Lewis A. Kaplan, *District Judge.*

These appeals and the bankruptcy court litigation from which they arise are rooted in a landlord-tenant relationship, through companies which they owned in whole or in part, between Steven Kirschenbaum and François Payard.   Mr. Kirschenbaum is the owner of the Lexington Avenue premises on Manhattan's Upper East Side in which Mr. Payard until 2009 operated a well-known restaurant, patisserie, and bakery.[1]   The considerable ill will between these protagonists may be a factor in why this dispute over what appears to be a relatively small amount of money has taken so long and generated so much acrimony.

As two able bankruptcy judges have rendered three written opinions and made pertinent findings from the bench on the matters that concern us here, it is unnecessary for me to cover the events below in complete detail.   It suffices for me to touch upon those of the highlights that inform my decision.

---

[1]     Mr. Payard reportedly was and remains associated with various other food businesses.

*Facts*

*PBS's Demise*

The Payard Upper East Side operation was owned by PBS Foods, LLC (the "Debtor" or "PBS"), which operated under the name Payard Patisserie and Bistro.  PBS was wholly owned by Mr. Payard.  The Upper East Side business occupied premises owned by 1032-1034 Lex. Ave., Ltd. (the "Landlord"), Mr. Kirschenbaum's company.

In February 2009, *The New York Times* reported that the New York City Department of Health had closed down the Payard Patisserie and Bistro.[2]  The record does not reveal whether the bistro later reopened.  In any case, however, PBS called it quits at the end of June 2009 and shut down permanently.  Although the cause reportedly was a result of the economic downturn,[3] the Trustee alleged in one of the adversary proceedings discussed below that the business closed in consequence of a doubling of its rent as of January 1, 2009 and "an ongoing dispute with its landlord."[4]

---

[2]  Glenn Collins, *Payard Shut By Health Department*, N.Y. Times, Feb. 18, 2009, *available at* https://dinersjournal.blogs.nytimes.com/2009/02/18/payard-shut-by-health-department (last visited Feb. 14, 2017).

[3]  Christine Haughney, *OPEN AND SHUT; Chronicle of Changing City*, N.Y. Times, July 5, 2009, *available at* http://www.nytimes.com/2009/07/05/nyregion/05open.html (last visited Feb. 14, 2017).

[4]  These appeals are from orders in *Geron v. Holding Capital Group, Inc., et ano.*, 11-ap-2717 (JLG), so all docket item numbers are to the docket sheet for that proceeding except where otherwise indicated.  References to docket item numbers in the bankruptcy case, 09-bk-15629 (JLG), are preceded by the letter P.  There were, in addition, three other adversary proceedings.  References to docket items in those proceedings are preceded by the letter A in the case of *Geron v. FR Ventures, LLC*, 11-ap-2609, by the letter B in the case of *Geron v. Payard Management, LLC*, 11-ap-2610, and by the letter C in the case of *Geron v. Payard*, 11-ap-2716 (JLG).

4

*The Chapter 7 Proceeding*

On September 17, 2009, PBS filed a petition for relief under Chapter 7 of the Bankruptcy Code.[5]

The schedules showed in relevant part that PBS had cash on hand of about $122,000 and total assets of less than $200,000, not counting trademarks and images of unknown value relating to "Payard."[6]

The liability side was dismal. An entity called FP Holdings, LLC ("Holdings") asserted a claim in excess of $726,000 allegedly secured by all of PBS assets. Unsecured non-priority claims totaled a little over $498,000 of which $360,000 was claimed by the Landlord.[7] It appears that the size of the Landlord's claim increased later as a result of a judgment. It in any case is undisputed that the Landlord overwhelmingly is the largest creditor of the PBS estate.

*The Adversary Proceedings*

In September 2011, the Trustee commenced four adversary proceedings, two of which are relevant here.

---

The Trustee's allegation is at DI P28 ¶ 10, which is the complaint in the proceeding against Management.

[5]   DI P1.

[6]   DI P11.

[7]   *Id.*

5

*The Present Case*

        *Geron v. Holding Capital Group, Inc.*, the present case, was an action against Holding Capital Group, Inc. ("HCG") and Holdings.  The complaint contained claims for avoidance and recovery of certain transfers allegedly made to HCG and Holdings, disallowance of all claims of HCG and Holdings under Bankruptcy Code § 502(d), and—most significantly for these appeals—a claim against Holdings alone to recover for alleged "unjust enrichment."

        Mr. Payard and Holdings, which was wholly owned by HCG, jointly owned an entity called Payard Management, LLC ("Management").  The unjust enrichment claim—Count Eight of the complaint—rested upon a written agreement dated May 31, 2006 between PBS and Management (the "Licensing Agreement") pursuant to which PBS transferred to Management exclusive worldwide rights to license Payard's trademarks and images.  The complaint alleged that the transfer had been made without consideration, that Management had received fees from its sub-licenses of about $20,000 per month, and that the Trustee was entitled to recovery from Holdings.  The Trustee's sole theory of recovery was that Holdings had been a part owner of Management and thus must have benefitted from the license fees paid to Management.  The complaint did not assert any claim that the Trustee was entitled to pierce the corporate veil between Management and Holdings.[8]

*The Case Against Management*

        The other relevant proceeding was *Geron v. Payard Management, LLC*, which asserted only two claims.  The first sought to avoid and recover an allegedly preferential transfer of

---

[8]     Compl. [DI 1] ¶¶ 72-81.

6

about $129,000 by the Debtor to Management.  The second sought to disallow any claims Management might file against the estate unless the transfer were returned.[9]  Significantly, the Trustee asserted no claim against Management (a) based on the Licensing Agreement by which Debtor gratuitously transferred to Management worldwide licensing rights or (b) to recover the license fees allegedly received by Management as a result of sub-licenses it granted thereunder.  In due course, this and two other related cases were settled by a single agreement dated June 7, 2012,[10] over the Landlord's objection.[11]

The order approving that settlement was entered on September 13, 2012.  Although the Landlord did not appeal from the approval of that settlement, it is noteworthy that its papers in opposition to the settlement, which were filed on June 27, 2012, asserted that the income generated by the Licensing Agreement was about $20,000 per month and thus at least $1.2 million over five years.[12]

*The Settlement of the Present Adversary Proceeding*

On December 13, 2013, the Trustee entered into a settlement agreement with HCG and Holdings to resolve this adversary proceeding.  In substance, the settlement called for (a) HCG and Holdings to make a one-time payment of $105,000 to the Trustee, (b) Holdings to waive its

---

[9]
      DI P28.

[10]
      DI B14-1.

[11]
      DI B26.

[12]
      DI P33 ¶¶ 12-15 (Landlord cited the Trustee as the source of that information).

unsecured claim of $726,131 against the estate, and (c) HCG and Holdings to waive their claims under Section 502(h) of the Bankruptcy Code, in full satisfaction of any and all of the estate's claims against them.

On January 8, 2014, the Trustee moved for approval of the settlement pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion"). On March 11, 2014, the court held a hearing on the 9019 Motion during which the Trustee argued that approval of the settlement would be in the best interests of the estate and its creditors. Although the Landlord had not filed any response or opposition to the 9019 Motion, its counsel appeared at the hearing and told the court that his "gut reaction" to the settlement was that it was "too low."[13] Counsel explained that he had not filed a written response or objection because the Trustee had responded only recently to the Landlord's discovery requests and he needed more time to "digest the information . . . to see what position [he and his client were] going to take."[14] The Landlord's counsel requested an adjournment of the hearing to permit them to do so. The Trustee did not oppose an adjournment but insisted that he had responded to the Landlord's discovery requests and that those responses had been in the Landlord's possession for at least two to three weeks at that point.

Ultimately, the court denied the Landlord's request for an adjournment, went forward with the hearing, and indicated that it would approve the settlement. The court, however, agreed to hold the order approving the settlement for one week to permit the Landlord to make a "better offer"

---

[13]     Hr'g Tr. 4:17-18, Mar. 11, 2014 [DI 27].

[14]     *Id.* at 5:6-13.

8

to the Trustee.[15]   But no deal was reached within a week; instead, the Trustee treated the matter as adjourned *sine die* while the parties discussed a potential resolution.

Over the next seven months, the Trustee and the Landlord engaged in settlement negotiations.   In the end, the Landlord offered principally to pay the Trustee $130,000 to purchase the estate's claims against HCG and Holdings.   The Trustee, however, declined that offer and asked the court to renew the hearing on the 9019 Motion.

This time the Landlord filed a written objection to the 9019 Motion.   During the renewed hearing, the Landlord urged the court to deny the 9019 Motion.   It argued first that the court had an obligation to review the settlement in light of the Landlord's offer.   It contended also that the Landlord was entitled to an evidentiary hearing on "whether or not [the settlement] me[t] the lower end of the [range of] reasonableness."[16]   The court rejected both arguments and granted the 9019 Motion, stating:

> "The Trustee is an experienced trustee, he's an experienced practitioner, he believes this is the best deal even in light of [the Landlord's] offer.  I think that meets at least the lowest standard of 9019 therefore I'm going to approve the settlement."[17]

*The 9023 Motion*

On November 18, 2014, the Landlord filed a motion for reconsideration (the "9023

---

[15]

     *Id.* at 7:13-17, 8:5-11.

[16]

     Hr'g Tr. 13:25-14:1, Nov. 4, 2014.

[17]

     *Id.* at 16:22-17:1.

Motion") of the order approving the settlement.[18]  In connection with the 9023 Motion, the Landlord sought discovery from the Trustee related to the payment of license fees to Management or Holdings.  In response, the Trustee produced three documents that he had failed to produce in response to two earlier discovery requests: (a) an August 2011 letter from François Payard to the Trustee concerning a license agreement and a $150,000 payment of license fees to Management in 2007; (b) a January 5, 2007 license agreement between Management and Westin Chosun Seoul; and (c) pages from the Debtor's general ledger with handwritten notations concerning license fee payments intended for Management that had been wired to the Debtor in error (collectively, the "New Documents").[19]

After a hearing, the court denied the 9023 Motion on the basis that none of the alleged errors of law or fact identified by the Landlord provided grounds for relief.[20]

*The First Appeal and the Subsequent 9024 Motion*

On June 11, 2015, the Landlord filed a notice of appeal from the bankruptcy court's orders granting the 9019 Motion and denying the 9023 Motion.

While that appeal was pending in this Court, the Landlord moved in the bankruptcy

---

[18]

The motion was made pursuant to Fed. R. Civ. P. 59(e), which is made applicable to bankruptcy proceedings under Fed. R. Bankr. P. 9023.

[19]

The handwritten notes explain that, on three occasions, "royalty" payments from "Korea" mistakenly were wired to the Debtor's account even though there were supposed to be paid to Management.  The notes reflect also that the Debtor transferred those mistaken payments to Management.  *See* DI 66-16.

[20]

DI 59.

10

court for relief from the 9019 approval order (the "9024 Motion").[21]   The Landlord asserted two

grounds for relief: (1) newly discovered evidence—specifically, the New Documents—would have

altered the court's decision to grant that motion, and (2) the newly discovered evidence revealed that

the Trustee misrepresented facts to the court during the November 4 hearing on the 9019 Motion.

Given that the 9024 Motion had the potential to moot the first appeal in this Court, I stayed that

appeal pending disposition of the motion.

On April 8, 2016, the bankruptcy court denied the 9024 Motion.[22]


*The Second Appeal*

Ten days later, the Landlord filed a second notice of appeal, this time from the

bankruptcy court's order denying the 9024 Motion.   In due course, I consolidated the two appeals

and held oral argument.


*Discussion*

I.    *Appeals from the 9019 and 9023 Orders*

Fed. R. Bankr. P. 8014(a), which is derived from Fed. R. App. P. 28,[23] requires an

appellant's opening brief to include, among other things, an argument section "which must contain

---

[21]

The motion was made pursuant to Fed. Civ. P. 60(b)(2), (3), and (6), which are
applicable to bankruptcy proceedings under Fed. R. Bankr. P. 9024.

[22]

DI 83.

[23]

*In re Residential Capital, LLC*, 552 B.R. 50, 62 n.9 (S.D.N.Y. 2015), *appeal dismissed*
(Mar. 9, 2016).

a succinct, clear, and accurate statement of the arguments made in the body of the brief . . . ."[24]  As the Second Circuit repeatedly has held, "simply stating an issue does not constitute compliance with Rule 28(a)[—and, by proxy, Rule 8014(a)]: an appellant . . . must state the issue *and* advance an argument."[25]   Accordingly, "[i]ssues not sufficiently argued in the briefs are considered waived . . . ."[26]

Here, the Landlord failed to advance any argument in support of its appeals from the order approving the HCG/Holdings settlement pursuant to Rule 9019 or from the order denying reconsideration pursuant to Rule 9023.   Merely mentioning the orders in the "issues presented" section of its brief, without more, does not suffice.[27]   Accordingly, I deem the Landlord's appeals from those orders waived for inadequate briefing and failure to comply with Rule 8014.   In any case, I have reviewed those rulings on the merits.   Had the Landlord properly preserved contentions that they were entered in error, I would affirm them substantially for the reasons given by the court below.

---

[24]     Fed. R. Bankr. P. 8014(a)(8).

[25]     *Frank v. United States*, 78 F.3d 815, 833 (2d Cir. 1997) (emphasis in original), *vacated on other grounds*, 521 U.S. 1114 (1997); *see also, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

[26]     *Norton*, 145 F.3d at 117; *see also In re Stephenson*, No. 96-cv-558 (DC), 1996 WL 403087, at *1 (S.D.N.Y. July 18, 1996) (failure to comply with Rule 8014 is grounds for dismissing bankruptcy appeal).

[27]     *Frank*, 78 F.3d at 833 (deeming claim waived on appeal where cross-appellant merely mentioned claim in "issues" section and referred court to arguments below).

II.      *The Appeal from the 9024 Order*

This Court reviews a bankruptcy court's denial of a Rule 60(b) motion for abuse of discretion.[28]  "A bankruptcy court exceeds its allowable discretion where its decision (1) rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding."[29]  "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."[30]  "The burden of proof is on the party seeking relief from judgment," in this case the Landlord.[31]

A.      *Rule 60(b)(2)*

To obtain relief under Rule 60(b)(2),

"the movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the

---

28

      *In re Olsen*, No. 06-cv-4004 (RJS),  2008 WL 4298586, at *2 (S.D.N.Y. Sept. 19, 2008), *aff'd*, 357 F. App'x 369 (2d Cir. 2009).

29

      *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007) (internal quotation marks omitted) (quoting *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003)).

30

      *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also In re AMR Corp.*, No. 16-cv-1970 (VEC), 2017 WL 946299, at *5 (S.D.N.Y. Mar. 9, 2017).

31

      *Int'l Bhd. of Teamsters*, 247 F.3d at 391.

outcome, and (4) the evidence must not be merely cumulative or impeaching."[32]

In the proceedings below, the Landlord argued essentially that the New Documents proved that Management, an entity owned in part by Holdings, had received license fees in the amount of $150,000 per year and that the claim asserted by the Trustee against Holdings in Count Eight therefore was more valuable to the estate than the Trustee had represented at the Rule 9019 hearing. The Landlord contended that the bankruptcy court would not have approved the settlement had the New Documents been before it and that relief therefore was warranted under Rule 60(b).

The bankruptcy court was not convinced. It concluded that the New Documents did not "substantiate, let alone support, the allegations underlying Count Eight because they d[id] not reflect the payment of license fees from any source to Holdings and provide[d] no support for the Trustee's veil piercing claims."[33] In other words, the bankruptcy court did not believe that the New Documents were relevant to the HCG/Holdings settlement because the documents related to payments to Management and thus did not implicate either Holdings or HCG. In the circumstances, the bankruptcy court concluded that the judge who had approved the settlement would not likely "have attached much, if any, significance to [the New Documents] had the Landlord offered them in opposition to the Rule 9019 Motion."[34] Accordingly, the court held that the Landlord had not established a basis for relief under Rule 60(b)(2) because it had failed to show that the New Documents likely would have altered the outcome of the 9019 Motion.

---

[32]

   *Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996); *see also Int'l Bhd. of Teamsters*, 247 F.3d at 392 (quoting *Frankel*, 939 F. Supp. at 1127).

[33]

   *In re PBS Foods, LLC*, 549 B.R. 586, 598 (Bankr. S.D.N.Y. 2016).

[34]

   *Id.* at 599.

On appeal, the Landlord no longer argues that the New Documents likely would have changed the outcome of the 9019 Motion. Rather it contends that it is entitled to relief under Rule 60(b)(2) because the New Documents would have prompted it to pursue additional discovery—specifically, discovery *from Holdings* about license fee payments it may have received from Management. That argument fails for two reasons.

First, as the court below correctly noted, the Landlord had the opportunity to seek discovery from Holdings in connection with the proposed settlement but elected not to do so—it pursued limited discovery from the Trustee alone. It took no depositions of Holdings or HCG and sought no documents from them. Although the Landlord contends that it was not until it received the New Documents that it realized the need to pursue discovery from Holdings about its possible receipt of license fee payments from Management, there is no merit to that contention. Not only was the Landlord on notice of the allegations against Holdings in Count Eight by virtue of the Trustee's complaint, but it admitted that Management's counsel provided it with information in September 2012 concerning license fee payments Management had received in 2008 and 2009. Moreover, the Landlord stated in papers in the Management adversary proceeding that Management's licensing agreement generated income of about $20,000 per month. In other words, the Landlord was aware of Management's receipt of license fee payments and thus of the possibility that all or some of that money flowed through Management to Holdings well before it obtained the New Documents. Why, then, would it have needed the New Documents to tell it that which it already knew? Plainly, it would not have.

Second, the Landlord's argument that it is entitled to relief under Rule 60(b)(2) on the basis that the New Documents would have prompted it to pursue additional discovery ignores

an essential requirement of subsection (b)(2).[35]   Relief under subsection (b)(2) may be obtained only if the movant shows that the newly discovered evidence is "of such importance that it probably would have changed the outcome" of the proceedings.[36]   That is to say, it is not enough that the Landlord might have done things differently had it obtained the New Documents sooner.   Rather, the Landlord must prove that the New Documents likely would have resulted in a change in the outcome of the 9019 Motion.   The Landlord has not even attempted to show how it satisfied that element.   Nor, in my view, could it.   As has been stated repeatedly, the license fee payments reflected in the New Documents were made neither to Holdings nor HCG.   They were made from sub-licensees to Management, an entirely distinct corporate entity.   Moreover, nothing in the New Documents provides any support for the veil-piercing allegations in the adversary complaint.   In the circumstances, I am persuaded that the New Documents—which implicate neither Holdings nor HCG—would not have changed the outcome of the 9019 Motion.   Indeed, they were not even material to it.

Accordingly, it cannot be said that the bankruptcy court abused its discretion in holding that the Landlord failed to show a basis for relief under Rule 60(b)(2).

### B.    Rule 60(b)(3)

A movant seeking relief under Rule 60(b)(3) "must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other

---

[35]        Appellant's Br. 27.

[36]        *Int'l Bhd. of Teamsters*, 247 F.3d at 392 (quoting *Frankel*, 939 F. Supp. at 1127).

The Landlord's reliance on what Rule 60(b)(3) supposedly requires is misplaced.

16

misconduct," and that "this conduct prevented [the movant] from fully and fairly presenting [its] case."[37]   A Rule 60(b)(3) motion "cannot serve as an attempt to relitigate the merits."[38]

The Landlord argued below that it was entitled to relief under subsection (b)(3) on two grounds: (1) the Trustee made a material misrepresentation during the Rule 9019 hearing when he stated that no license fees had been paid because the New Documents showed that Management had received license fees in 2007 from Westin Chosun; and (2) the Trustee committed "misconduct" within the meaning of subsection (b)(3) by failing to produce the New Documents in connection with the 9019 Motion.

The bankruptcy court found no merit to the Landlord's contentions.   First, it concluded that the Landlord had not presented any evidence, let alone clear and convincing evidence, that the Trustee misstated facts regarding the license fees to the court.   Read in context, the court found, the Trustee "was not speaking to whether any license fee payments were made to the Debtor, he was speaking to whether any license fees had been paid to Holdings, the defendant in Count Eight."[39]   Moreover, it found that nothing in the record supported the contention that Holdings had received license fee payments from Management or anyone else.   Second, while the court acknowledged that even accidental failure to disclose or produce discovery could constitute misconduct within the meaning of Rule 60(b)(3), it concluded that the Landlord had failed to show that any misconduct substantially interfered with its ability to fully and fairly prepare for and defend

[37] *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (internal quotation marks omitted) (quoting *Walther v. Maricopa Int'l Inv. Corp.*, No. 97-cv-4816 (HB), 2002 WL 31521078, at *3 (S.D.N.Y. Nov. 12, 2002)).

[38] *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).

[39] *PBS Foods*, 549 B.R. at 603.

against the 9019 Motion.[40]

On appeal, the Landlord maintains that the Trustee committed misconduct by failing to produce the New Documents in connection with the 9019 Motion and that the bankruptcy court erred in holding that Rule 60(b)(3) requires a movant to show that it was prevented from fully and fairly presenting its case by the alleged misconduct.  According to the Landlord, once a movant establishes that misconduct occurred, it is entitled to relief under subsection (b)(3) without regard to whether the misconduct had any significant effect on its ability to put forward its position.

I disagree.  Even assuming that the Trustee committed misconduct within the meaning of Rule 60(b)(3) by failing to produce the New Documents earlier, the Landlord's contention that that fact alone entitles it to relief runs contrary to decisions of numerous courts in this Circuit.[41]   The Landlord's attempts to distinguish those cases, moreover, are unavailing.  I am persuaded that Rule 60(b)(3) requires a movant to show that the alleged misconduct undermined its ability to fully and fairly litigate its case and that the Landlord did not make that showing.

The Landlord maintains also that the Trustee misrepresented facts regarding the license fees to the bankruptcy court.  As mentioned above, the bankruptcy court found that the Trustee's statement about license fee payments was directed to whether license fees had been paid to Holdings, the defendant in this case, not the Debtor.[42]   While the Landlord may disagree with that reading, it has offered nothing—nor do I find anything—to suggest that the bankruptcy court's

---

[40]

*Id.* at 26.

[41]

*See, e.g.*, *Thomas v. City of N.Y.*, 293 F.R.D. 498, 503 (S.D.N.Y. 2013); *Catskill Dev., L.L.C.*, 286 F. Supp. 2d at 312; *Walther*, 2002 WL 31521078, at *3; *Chnapkova v. Koh*, No. 88-cv-6144 (CMM), 1992 WL 203906, at *2 (S.D.N.Y. Aug. 7, 1992).

[42]

*PBS Foods*, 549 B.R. at 603.

18

finding was erroneous, let alone clearly erroneous.

In the circumstances, the bankruptcy court did not abuse its discretion in denying the Landlord relief under Rule 60(b)(3).

C.      Rule 60(b)(6)

"Rule 60(b)(6) is unavailable if, as here, the motion is 'premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).'"[43]   Accordingly, the bankruptcy court did not abuse its discretion in holding that the Landlord's claim under this subsection failed.

Conclusion

For the reasons stated above, the bankruptcy court's orders granting the 9019 Motion and denying the 9023 and 9024 Motions are affirmed in all respects.

SO ORDERED.

Dated:        March 28, 2017

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[43]        In re Bernard L. Madoff Inv. Sec., LLC, 489 F. App'x 519, 520 (2d Cir. 2012) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988)).